UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CORWIN ROBERSON

Petitioner,

v.

CATHERINE S. BAUMAN,

Respondent.

_____/

Case No. 14-cv-13784

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION [1],
DENYING A CERTIFICATE OF APPEALABILITY, AND
GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

**I. INTRODUCTION**

Corwin Roberson ("Petitioner") filed a *pro se* Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on October 1, 2014.  In his Petition [1], Petitioner challenges his Saginaw County (Michigan) convictions and sentence for second-degree murder, *see* MICH. COMP. LAWS § 750.317, carrying a dangerous weapon with unlawful intent, MICH. COMP. LAWS § 750.226, and possessing a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b.

The Petition asserts that his guilty plea was involuntary, that his sentencing guidelines were incorrectly scored, and that his trial attorney was ineffective. Respondent Catherine S. Bauman urges the Court, through counsel, to deny the

Petition on the basis that the state courts reasonably concluded that Petitioner's plea was voluntary.  Respondent further asserts that Petitioner's sentencing claim lacks merit and is not cognizable on habeas review.  The Court agrees that Petitioner's claims do not warrant habeas corpus relief.  Accordingly, the Court will **DENY** the Habeas Petition [1].

## II. Background

Petitioner was charged in Saginaw County, Michigan with open murder, carrying a dangerous weapon with unlawful intent, and felony firearm.  The charges arose from allegations that Petitioner and two other men beat and killed twenty-year-old Ernie Griffin.  Apparently, the motive for the attack was Petitioner's belief that Griffin possessed his gun.

The evidence at trial established that, on the evening of July 12, 2011, Griffin and his friend Dexter Pruitt walked to a store in Buena Vista Township.  When they got to the store, Petitioner and two of his friends (Jeremy Hatfield and Enese Dixon) approached Griffin from behind.  Petitioner placed Griffin in a choke hold.  Griffin fell to the ground.  Petitioner and his two friends then proceeded to punch and kick Griffin in the head, chest, and ribs.  At one point, they picked Griffin up and then slammed him face-down on the cement.  After the attack, Griffin got up and tried to run away.  Jeremy Hatfield, however, used Petitioner's

gun to fire five gunshots at Griffin. Griffin died from the gunshot wounds and blunt trauma.

At his criminal trial, Petitioner asserted that he placed Griffin in a choke hold, but that he did not participate in the subsequent beating or shooting. On May 22, 2012, after three days of a jury trial in Saginaw County Circuit Court, Petitioner pleaded guilty to second-degree murder, carrying a dangerous weapon with unlawful intent, and felony firearm. On July 26, 2012, the trial court sentenced Petitioner to two years in prison for the felony firearm conviction, followed by concurrent terms of life imprisonment for the murder conviction and two to seven and a half years for the carrying-a-dangerous-weapon conviction.

Petitioner subsequently raised his habeas claims in a motion to withdraw his guilty plea and for re-sentencing. The trial court held oral arguments on the motion, but found no merit in Petitioner's arguments and denied his motion. The Michigan Court of Appeals subsequently denied Petitioner's appeal for "lack of merit in the grounds presented," *People v. Roberson*, No. 314819 (Mich. Ct. App. Dec. 3, 2013), and on April 28, 2014, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Roberson*, 495 Mich. 994; 845 N.W.2d 125 (2014) (table decision).

On October 1, 2014, Petitioner filed his habeas corpus petition. He asserts the following grounds for relief:

-3-

I.      Petitioner's state and federal constitutional rights were violated when he was coerced into taking a plea because his attorney failed to explain the parole differences between an indeterminate sentence with a minimum of 15 years and the possibility of parole [after 15 years of a life sentence with the possibility of parole] and this constituted ineffective assistance of counsel.

II.     The petitioner is entitled to resentencing where the sentencing guidelines were mis-scored in violation of the state and federal due process right to sentencing based upon accurate information and trial/defense counsel was ineffective for failing to challenge the scoring.

(Pet. for Writ of Habeas Corpus, Attachment B).

## III.  STANDARD OF REVIEW

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, 562 U.S. 86, 97 (2011).  Pursuant to § 2254, the court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

-4-

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas
> court may grant the writ if the state court arrives at a conclusion
> opposite to that reached by [the Supreme] Court on a question of law
> or if the state court decides a case differently than [the Supreme]
> Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause [of § 2254(d)(1)], a federal habeas
> court may grant the writ if the state court identifies the correct
> governing legal principle from [the Supreme] Court's decisions but
> unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., opinion of the

Court for Part II).

"[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application

must also be unreasonable." *Id*. at 411. "AEDPA thus imposes a 'highly deferential

standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333

n.7 (1997), and 'demands that state-court decisions be given the benefit of the

doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)."  *Renico v.

Lett*, 559 U.S. 766, 773 (2010).

"A state court's determination that a claim lacks merit precludes federal

habeas relief so long as 'fair-minded jurists could disagree' on the correctness of

the state court's decision."  *Richter*, 562 U.S. at 101 (quoting *Yarborough v.

Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a

federal court, a state prisoner must show that the state court's ruling on his claims "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Id*. at 103.

Both of Petitioner's claims include allegations of ineffective assistance of trial counsel. To prevail on these claims, Petitioner must show that his trial attorney's "performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*.

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689.

To demonstrate that counsel's performance prejudiced the defense, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. "This does not require a showing that counsel's actions

'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable."  *Richter*, 562 U.S. at 111–12 (quoting *Strickland*, 466 U.S. at 693).

## IV. DISCUSSION

### A. Claim One:  Involuntary Plea and Ineffective Assistance of Counsel

#### *1. The Plea*

Petitioner alleges that his guilty plea was involuntary, unknowing, and unintelligent because he thought that he was pleading guilty in exchange for a minimum sentence of fifteen years in prison.  He claims that he is likely to spend the rest of his life in prison and that he was unaware of this likelihood when he pleaded guilty.

##### a.  Clearly Established Federal Law

"A guilty or no-contest plea involves a waiver of many substantial constitutional rights." *Fautenberry v. Mitchell*, 515 F.3d 614, 636 (6th Cir. 2008). Consequently, the plea must be a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970).  For a guilty plea to be valid, the defendant must appreciate the consequences of his waiver of constitutional rights, waive his rights without being coerced to do so, and understand the rights that he is surrendering by pleading guilty.  *Ruelas v. Wolfenbarger*, 580 F.3d 403, 408 (6th

Cir. 2009).  The defendant also must be aware of the maximum sentence that could be imposed.  *Id.* at 408.  And because an involuntary plea is "an impairment of a defendant's substantial rights," *United States v. Martin*, 668 F.3d 787, 792 (6th Cir. 2012), courts must consider all the relevant circumstances when determining whether a plea was voluntary.  *Brady*, 397 U.S. at 749.

### b.  Application

The assistant prosecutor explained the plea offer on the record at Petitioner's plea proceeding on May 22, 2012.  He stated that Petitioner would be pleading guilty to an added count of second-degree murder, which replaced the open murder/felony murder count, and that Petitioner also would plead guilty, as charged, to felony firearm and carrying a dangerous weapon with unlawful intent.  Additionally, Petitioner would be required to acknowledge that he was a habitual offender.   The prosecutor further explained that the sentence for the murder conviction was "a parolable life sentence."  Plea  Tr. at 3-4, May 22, 2012, ECF No. 9-12 (Pg. ID No. 366).[1]

Defense counsel added that Petitioner would be eligible for parole in fifteen years.  Defense counsel also stated that he and Petitioner had discussed the matter fully in the courthouse and in prison and that Petitioner wished to avail himself of

---

[1]  Had Petitioner been convicted of first-degree murder, he would have been subject to a mandatory sentence of life imprisonment without the possibility of parole.  MICH. COMP. LAWS § 750.316(1).

the plea offer as stated on the record. *Id*. at 4-5 (Pg. ID No. 366–67). After
Petitioner swore to tell the truth, the following colloquy occurred between him and
the trial court:

> THE COURT:  You are Corwin Roberson?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Mr. Sturtz is your lawyer?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Have you had a chance to completely discuss this case
> with Mr. Sturtz?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Did you hear and understand the plea agreement
> placed on the record?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Is it your intention to accept the plea agreement?
>
> THE DEFENDANT:  Fifteen to life?  Sir?
>
> THE COURT:  No.  That's not the plea agreement.  The plea
> agreement is life with the possibility of parole.
>
> A VOICE:  Oh, God.
>
> THE DEFENDANT:  So it ain't 15?
>
> THE COURT:  Wow.
>
> THE DEFENDANT:  I thought it was 15.

MR. STURTZ [defense counsel]:  No, no, no.  You're eligible for parole in 15 years.  I told you the max is life.

THE DEFENDANT:  Yes, sir. Yes, sir.

THE COURT:   You understand it's 15 parolable years?   I have nothing to do with that.  That's up to the parole board - -

THE DEFENDANT:  I know, sir.

THE COURT:  – so I'm not saying 15 to life is your sentence.

THE DEFENDANT:  Yes, I know, sir.

THE COURT:  Okay.  So are we clear on that?

THE DEFENDANT:  Yes.

THE COURT:  So now, did you hear and understand the plea agreement?

THE DEFENDANT:  Yes.

THE COURT:  Is it your intention to accept the plea agreement as stated?

THE DEFENDANT:  Yes.

THE COURT:  Pleading to second-degree murder and also Count II, which is felony firearm, and Count V, which is dangerous weapon with unlawful intent.

THE DEFENDANT:  Yes.

THE COURT:  That's the plea agreement.

MR. KING [the prosecutor]:  Plus habitual.

THE COURT:  Yeah, plus habitual offender.

THE DEFENDANT:  Yes.

*Id.* at 5–7 (Pg. ID No. 366–67).

Petitioner went on to say that he had not been promised anything other than what was stated in court and that no one had threatened him.  He also stated that he was pleading guilty of his own free choice and that he understood the rights he was waiving by pleading guilty.  Defense counsel assured the trial court that Petitioner appeared to understand his rights.  *Id*. at 7–8 (Pg. ID No. 367).

The trial court subsequently explained the maximum sentence for each of the charged crimes.  The court said that:  the sentence for felony firearm was a mandatory two years, consecutive to any other sentence Petitioner received; the sentence for carrying a dangerous weapon with unlawful intent was five years, but the maximum penalty would increase to seven and a half years as a result of the habitual offender notice; and the maximum sentence for second-degree murder was life in prison with the possibility of parole.  Petitioner claimed to understand the maximum penalties and then stated that he wished to plead guilty.  *Id*. at 8–9 (Pg. ID No. 367).

Petitioner also provided a factual basis for his plea.  He admitted that he participated in the assault on Ernie Griffin by striking Griffin with his feet even though he knew that he was creating a very high risk of death or great bodily harm by doing so.  He also conceded that the killing was not justified, that he possessed

-11-

a firearm during the incident, and that he had a prior conviction.  *Id*. at 9–11 (Pg. ID No. 367).

The record, as summarized above, indicates that Petitioner's plea was voluntary, knowing, and intelligent.  He claimed to understand the plea agreement, the rights he was waiving by pleading guilty, and the maximum penalties. Although he initially expressed some confusion about the sentence for second-degree murder, the trial court clarified the issue by stating that the sentence was life imprisonment with the possibility of parole.  Petitioner then assured the trial court that he understood the plea agreement and that he wanted to accept the plea offer.

Petitioner's "[s]olemn declarations in open court carry a strong presumption of verity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).  Furthermore,

> [t]he rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision.  A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended . . . the likely penalties attached to alternative courses of action.

*Brady*, 397 U.S. at 757.  The Court therefore rejects Petitioner's claim that his plea was involuntary, unknowing, and unintelligent.

-12-

*2. Trial Counsel's Advice*

Petitioner alleges that his trial attorney was ineffective because the attorney failed to explain the difference between an indeterminate sentence with a minimum sentence of fifteen years, and a life sentence with the possibility of parole after fifteen years in prison. Petitioner contends that his attorney should have explained the Michigan Parole Board's procedure for "lifers" and informed him how difficult it is to be released on parole when a person is sentenced to life imprisonment with the possibility of parole.

a. Supreme Court Precedent

A defendant has the right to effective assistance of counsel when considering whether to accept a plea bargain and plead guilty. *Lafler v. Cooper*, 132 S. Ct. 1376, 1387 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010). But to prevail on a claim that trial counsel was ineffective during plea negotiations, the petitioner must satisfy the two-part test set forth in *Strickland*. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). This requires showing that "counsel's performance was deficient" and that "the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. In the context of a guilty plea, a deficient performance is one that falls below an objective standard of reasonableness or is outside the range of competence demanded of attorneys in criminal cases. *Hill*, 474 U.S. at 56–57.

-13-

The "prejudice" prong of the two-part *Strickland* test "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id*. at 59.  In other words, the "defendant must show [that] the outcome of the plea process would have been different with competent advice." *Lafler*, 132 S. Ct. at 1384.

### b. Application

Petitioner asserts that his trial attorney failed to inform him that the Michigan Parole Board does not distinguish between defendants who are serving a sentence of life imprisonment with the possibility of parole and defendants who are serving a life sentence without the possibility of parole.  He claims that, for the Parole Board, "life means life."

 "[G]ross misadvice concerning parole eligibility can amount to ineffective assistance of counsel." *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988).  But "a defendant need not know all the possible consequences of his plea," *Ruelas*, 580 F.3d at 408, and a plea can be knowingly entered where the defendant agreed to a life sentence even though he misunderstood the implications  of a parolable life sentence in Michigan and believed that he would be paroled in a number of years. *McAdoo v. Elo*, 365 F.3d 487, 494-95 (6th Cir. 2004).

Here, no one promised Petitioner that he would be released on parole after fifteen years in prison.  Trial counsel correctly advised Petitioner at the plea

-14-

proceeding that he would be *eligible* for parole in fifteen years, *see* MICH. COMP. LAWS § 791.234(7)(a), and that Petitioner's maximum sentence was life imprisonment.  The trial court, moreover, emphasized that it was *not* saying the sentence was fifteen years to life, but that the sentence was life imprisonment.  The trial court also stated that parole eligibility was a matter for the parole board to decide.  Petitioner then acknowledged that the trial court had no control over parole, and he stated that he understood the plea agreement.  Plea Tr. at 6, May 22, 2012, ECF No. 9-12 (Pg. ID No. 366.)

Trial counsel's failure to advise Petitioner that the Michigan Parole Board was unlikely to release him in fifteen years did not amount to ineffective assistance, because "a defendant need not be informed of the details of his parole eligibility, including the possibility of being ineligible for parole."  *King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994) (citing *Brown v. Perini*, 718 F.2d 784, 788 (6th Cir. 1983), and *Armstrong v. Egeler*, 563 F.2d 796, 800 (6th Cir. 1977)).  Furthermore, trial counsel would have had no way of knowing what the parole board might do in fifteen years.

### 3. Summary

The state trial court and the Michigan Court of Appeals found no merit in Petitioner's claims about the voluntariness of his plea and trial counsel's performance. These decisions were objectively reasonable and neither contrary to

Supreme Court precedent, nor unreasonable applications of Supreme Court precedent. The Court therefore denies habeas relief on Petitioner's first claim.

## B. Claim Two: Miscalculated Sentencing Guidelines; Ineffective Assistance of Counsel

In his second and final claim, Petitioner alleges that the trial court miscalculated the sentencing guidelines and that trial counsel was ineffective for failing to challenge the guidelines score. Furthermore, Petitioner asserts that the trial court deprived him of due process by relying on inaccurate information at sentencing. He claims that the errors resulted in a higher guidelines score than he deserved and that this, in turn, led to an increase in his minimum sentence.

### 1. Clearly Established Federal Law

The state trial court's application of state sentencing laws and guidelines "is a matter of state concern only," *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003), and "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Consequently, Petitioner's allegation that the trial court incorrectly scored four offense variables of the state sentencing guidelines is not a cognizable claim on federal habeas corpus review. *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006); *Robinson v. Stegall*, 157 F. Supp. 2d 802, 823 (E.D. Mich. 2001).

-16-

Petitioner nevertheless couches his claim in constitutional terms by asserting that he had a due process right to be sentenced on accurate information. In *Townsend v. Burke*, 334 U.S. 736 (1948), the Supreme Court stated that a sentence based on "extensively and materially false" information, which the prisoner had no opportunity to correct through counsel, violates due process. *Id*. at 741. Petitioner was represented by counsel at his plea, and, for the following reasons, the Court finds that he was not sentenced on the basis of extensively and materially false information.

### 2. Application

#### a. Offense Variable 6

Petitioner alleges that he should have been scored ten points, not twenty-five points, for offense variable 6. "Offense variable 6 is the offender's intent to kill or injure another individual." MICH. COMP. LAWS § 777.36(1). A score of twenty-five points is appropriate if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MICH. COMP. LAWS § 777.36(1)(b). Ten points is appropriate if "[t]he offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the

offender to calm or there was gross negligence amounting to an unreasonable disregard for life."  MICH. COMP. LAWS § 777.36(1)(c).

Petitioner argued in state court that the criminal incident was a combative situation, which resulted from a property dispute, and that, after he put the victim in a choke hold, the other men beat the victim.  The trial court disagreed and said that offense variable 6 was appropriately scored because it was not a mere combative situation.  According to the trial court, there was a clear intent to kill or injure another person where three men attacked one person, slammed him to the ground, kicked him, and then shot him.  Mot. Hr'g, at 10-13, Feb. 11, 2013, ECF No. 9–14 (Pg. ID No. 378).

The trial court's conclusion is supported by the record.  The trial testimony established that Petitioner participated in the beating and provided the gun that was used to kill the victim.  Petitioner subsequently admitted at the plea proceeding that he assaulted the victim, knew that he was creating a very high risk of death or great bodily harm, and that he had neither justification nor excuse.  Plea Tr., at 9-11, May 22, 2012, ECF No. 9-12 (Pg. ID No. 367–68).

Petitioner's actions and admissions demonstrated more than a mere intent to injure, and there was no evidence of any provocation by the victim.  Consequently, offense variable 6 was properly scored at twenty-five points for intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm.

b.  Offense Variable 7

Petitioner states that he was erroneously scored fifty points for offense variable 7.  "Offense variable 7 is aggravated physical abuse."  MICH. COMP. LAWS § 777.37(1).  This offense variable should be scored fifty points if "[a] victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense."  MICH. COMP. LAWS § 777.37(1)(a).  Petitioner contends that the score should have been zero, which is appropriate if "[n]o victim was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MICH. COMP. LAWS § 777.37(1)(b).

The trial court determined that offense variable 7 was appropriately scored because the facts indicated that aggravated physical abuse occurred.  In reaching this conclusion, the trial court pointed out that, "not only was the victim slammed to the ground, he was kicked so hard that it broke his clavicle bone, and then they still shot him." Mot. Hr'g, at 14, Feb. 11, 2103, ECF No. 9-14 (Pg. ID No. 379).

The record supports the trial court's decision.   The testimony at trial established that Petitioner and his two companions repeatedly punched and kicked the victim while he was on the ground.  Trial Tr. Vol. II, 55-56, May 17, 2012, ECF No. 9-10 (Pg. ID No. 256). There was additional evidence that one or more of

the attackers slammed the victim face-down on the cement. *Id.* at 56. One witness stated that the assault went on for about half an hour and then the suspects shot the victim. *Id.* at 147–48 (Pg. ID No. 279).

The medical examiner testified that the victim's eye sockets were bruised, that his jawbone and collarbone were broken, and that he was still alive when he sustained his injuries. Trial Tr. Vol. III, 12–13, 15, 31, 36, May 18, 2012, ECF No. 9-11 (Pg. ID No. 312, 316, 318). The beating was so severe that the victim would have died without treatment even if he had not been shot. *Id.* at 24 (Pg. ID No. 315). The record clearly supports the conclusion that Petitioner treated the victim with excessive brutality. Thus, offense variable 7 was appropriately scored at fifty points.

c. Offense Variable 10

Petitioner received ten points for offense variable 10, but he claims that he should have received no points. "Offense variable 10 is exploitation of a vulnerable victim." MICH. COMP. LAWS § 777.40(1). The score should be ten points if "[t]he offender exploited a victim's physical disability, mental disability, youth or agedness, or a domestic relationship, or the offender abused his or her authority status." MICH. COMP. LAWS § 777.40(1)(b).

The victim in this case was a small man (5'5" tall and about 140 pounds), and the trial court noted at the post-conviction hearing that the victim was

-20-

simultaneously beat by three individuals who were much taller in stature. The trial court concluded from these facts that Petitioner and his friends exploited the victim's vulnerability "to the utmost degree when they beat him and kicked him and then . . . shot him." Mot. Hr'g at 14, Feb. 11, 2013 (Pg. ID No. 379). Because the state court did not base this conclusion on extensively and materially false information, the state court's determination stand.

      d.  Offense Variable 14

"Offense variable 14 is the offender's role" in the crime. MICH. COMP. LAWS § 777.44(1). A score of ten points is appropriate if "[t]he offender was a leader in a multiple offender situation." MICH. COMP. LAWS § 777.44(1)(a). Petitioner contends that offense variable 14 should have been scored zero because there is nothing in the record to support the conclusion that he was the leader in the situation. The state trial court disagreed on the basis that Petitioner was the first individual to grab the victim and that he "was right there in the middle of things." Mot. Hr'g at 15, Feb. 11, 2013 (Pg. ID No. 379).

Once again, the record supports the trial court's conclusion. According to the victim's friend, Dexter Pruitt, the criminal incident began when Petitioner grabbed the victim around the neck. Trial Tr. Vol. I, at 149, 173, May 16, 2012,[2] ECF No. 9-15 (Pg. ID No. 419, 425). Another eyewitness, Jessica Rivera, testified

---

[2]  The cover page for this volume of transcript indicates that this session of trial occurred on May 16, 2013. The correct date is May 16, 2012. *See* Pg ID 383.

-21-

that Petitioner subsequently pulled a gun from his pocket and hit the victim in the head with the gun.  (Trial Tr., Vol. II, at 110, May 17, 2012, ECF No. 9-10, Pg ID 269.)  Luke Spear testified that Petitioner said the conflict was about Petitioner's nine millimeter gun, which the victim supposedly possessed.  Petitioner also admitted to Spear that, he handed his .45 caliber gun to Jeremy Hatfield and that the gun was used to shoot the victim.  Trial Tr. Vol. III, 47-50, May 18, 2012, ECF No. 9–11 (Pg. ID No. 320–21).  Given this testimony, the trial court concluded that Petitioner was a leader in the conflict.  Offense variable 14 was properly scored.

> e.  Summary

For the reasons given above, the trial court did not sentence Petitioner on the basis of materially false information.  Therefore, Petitioner's right to due process was not violated, and the Court declines to grant relief on Petitioner's sentencing claims.

### 3.  Ineffective Assistance of Counsel

Petitioner alleges that his trial attorney was ineffective for failing to challenge the scoring of the guidelines.  The guidelines, however, were appropriately scored, and when none of the underlying errors are meritorious, a trial attorney is not ineffective for failing to object.  *Hoffner v. Bradshaw*, 622 F.3d 487, 509 (6th Cir. 2010); *see also Bradley v. Birkett*, 192 F. App'x 468, 475 (6th Cir. 2006) (stating that, because the petitioner's prosecutorial-misconduct claim

lacked merit, trial counsel's failure to object to the alleged misconduct was not constitutionally deficient performance).

## V. CONCLUSION

The state courts' rejection of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  They certainly were not so lacking in justification that there was an error beyond any possibility for fair-minded disagreement.   Accordingly, the petition for writ of habeas corpus [1] is **DENIED**.

"[A] prisoner seeking post-conviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Supreme Court has explained that, when, as here,

> a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward:   The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.

*Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner's plea was voluntary, knowing, and intelligent, and his sentence was not based on extensively or materially false information. Furthermore, defense counsel's performance was not deficient. Consequently, reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may appeal this Court's decision *in forma pauperis*, because he was granted *in forma pauperis* status in this Court, and an appeal could be taken in good faith. Fed. R. Civ. P. 24(a)(3)(A).

    IT IS SO ORDERED.

Dated: March 22, 2016                          /s/Gershwin A Drain
Detroit, MI                                    HON. GERSHWIN A. DRAIN
                                               United States District Court Judge